## M. E. WAINWRIGHT *v*. J. W. ATKINS.

[61 South. 454]

1. PRINCIPAL AND SURETY. *Rights of surety. As against principal after payment. Contribution. Appearance. What constitutes.*

Where a judgment is rendered against a principal and surety for over two hundred dollars and the surety settles the judgment for one hundred and ninety eight dollars, he can only recover from the principal that amount, and in a suit by the surety to recover the same of the principal the proper forum is a justice of the peace court.

2. SAME.

Where a surety satisfies a judgment against his principal and himself, he can recover of the principal the whole amount neces-

sarily paid for such satisfaction, there being no contribution as
between him and his principal.

3. APPEARANCE. *What constitutes.*

   Where the acceptor of a draft when sued with the drawer and in-
   dorser in another state, was only constructively served with
   process, but appeared in court and demanded oyer of the draft
   upon which he was being sued, and was answered by plaintiff
   filing original draft, it was such an appearance on his part as
   gave jurisdiction to the court to render ᵥa personal judgment
   against him.

APPEAL from the circuit court of Hinds county.
HON. W. A. HENRY Judge.
Suit by J. W. Atkins against M. E. Wainwright.  From
a judgment for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*Flowers, Alexander & Whitfield,* and *Powell & Thomp-
son,* for appellant.

The court will notice from the record that J. W. Atkins
paid the judgment in Louisiana on the 10th day of Feb-
ruary, 1909. The amount of the judgment at that time
was one hundred and ninety-eight dollars and fifty cents.
Under the law the judgment carried with it interest from
date. It is apparent that the interest alone on this judg-
ment would raise it above the jurisdiction of the justice
court and this, taken together with the other items set out
in the record, show most clearly that the actual amount
due by the judgment if anything, was over and above the
jurisdiction of the justice court.

We wish to call the court's special attention to the fact
that the declaration in Louisiana, upon which judgment
by default was rendered, does not state a cause of action
in that it did not charge or allege that the draft sued upon
was ever accepted by the defendant there—the drawee in
the draft—and hence no liability could attach, no cause of
action arise. There was no issue presented by the decla-
ration to be denied or traversed. There is no issue to

which the default judgment could possibly be responsive, hence the judgment could not be valid and for that reason could be collaterally attacked either in the state of Louisiana or in any other state where it might be made the basis of the suit. This proposition has been settled and forever put at rest by the Supreme Court of the United States in the case of *Henry T. Reynolds* v. *Robert F. Stockton*, 35 L. Ed. 464. We ask that the court carefully read the very able, and to our mind unanswerable, opinion in that case by Mr. Justice BREWER and wherein there was not a dissenting voice.

"The provision of the Federal Constitution, that full faith and credit shall be given in each state to the judicial proceedings of every other state, does not require that a judgment rendered in a court of one state, which is not responsive to the issues presented by the pleadings and was rendered in the absence of the defendant, must be recognizd as valid in the courts of any other state.

"The fact of the judgment rendered in a court of one state does not preclude inquiry in the courts of another as to whether the judgment was so far responsive to the issues tendered by the pleadings as to be a proper exercise of jurisdiction on the part of the court rendering it.

"The rule which determines the conclusiveness of a state judgment in its own state is that it is conclusive only so far as it determines matters put in issue by pleadings, and this rule enters into and limits the constitutional provision as to the faith and credit which must be given in one state to judgments rendered in another.

"When a complainant states some cause of action, and in that suit, service on, or appearance of, the defendant is made, a subsequent judgment therein rendered in the absence of the defendant, upon another and different cause of action than that stated in the complaint, is without binding force within the courts of the same state; and it has no better standing in the courts of another state."

See also the case of *Richard Windsor* v. *William McVeigh*, 23 L. Ed. (U. S.) 914. In this case the United

States Supreme Court held that the doctrine, that where a court had once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is only correct when the court proceds after acquiring jurisdiction of the cause, according to the established modes of governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it. The court further said "that all courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as civil and criminal; or to the particular modes of administering relief," etc.

"Though the court may possess jurisdiction of a cause, of the subject-matter and of the parties, it is still limited in its modes of procedure and in the extent and character of its judgments. It must act judicially in all things.

"If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the case be for personal libel, the court cannot order in the case a specific performance of a contract," etc.

So then, we say that if a court had passed such orders, or entered such judgment, it would have transcended its jurisdiction. See *Bigelow* v. *Forrest,* 76 U. S. X. 1 X, 700.

"And the reason is (says the court) that the courts are not authorized to exert their power in that way."

We respectfully submit that the same reasoning is applicable to the case at bar.

*Whitfield, McNeil & Whitfield,* for appellant.

We desire to call the court's attention, first, to the fact that the judgment in the Louisiana court was a joint judgment against J. T. Atkins, the plaintiff here, and M. E. Wainwright, the defendant here, for the sum of one hundred and seventy-five dollars, and interest and protest

fee, and all costs, all of which amounts to two hundred dollars, forty-nine and one-half cents, and that this attachment suit in Mississippi was instituted by said Atkins, one of the said joint defendant, against M. E. Wainwright, the other joint defendant, for the sum of one hundred and ninety-eight dollars and fifty cents, and the circuit judge directed the jury to find for the plaintiff in said sum of one hundred and ninety-eight dollars and fifty cents. This is so manifestly and palpably reversible error that it will be wholly unnecessary and an entirely superfluous task for this court to wade through the maze of pleadings in this record. We, therefore, address ourselves to this point. It is too elementary to require the citation of authority to support it; that one of two joint defendants suing the other of two joint defendants can only, in law, recover from said other joint defendant by way of contribution one-half of the amount of the entire judgment rendered *in solido* and jointly against them both. It must, therefore, be manifest that Atkins could only have sued Wainwright legally and could only have recovered from said Wainwright the sum of one hundred dollars, twenty-four and one-half cents, in any event, and hence the peremptory instruction to find for the plaintiff in the sum of one hundred and ninety-eight dollars and fifty cents is incomprehensible and reversible error.

In support of this view, we direct the court's attention to the case of *Mobile J. & K. C. R. Co.* v. *Hitt & Rutherford,* wherein MAYES, C. J., said, "Since the damage claimed for the entire cotton on account of delay and neglect was three hundred and twenty-nine dollars and twenty cents and one hundred and fifty dollars of this was paid at the date the amended declaration was filed against the Mobile J. & K. C. R. Co., the circuit court was without jurisdiction. At the time the amended declaration was filed the real amount claimed could only be one hundred and seventy-nine dollars and twenty cents." It will be noticed that in that case a third party sued the two de-

fendants, and one having paid one hundred and fifty dollars of the amount, the court held that said third party could then sue the other defendant only for the balance, and manifestly, where one of the two defendants himself sues the other defendant, he can only claim one-half the amount of the joint judgment.

While this point alone is sufficient to demand a reversal at the hands of this court, yet, inasmuch as there is another reversible error in this record, we will take the trouble to point it out and cases supporting our views with reference to it, so that if the court should not assent to the above argument and should overrule the case of *M. J. K. C. R. Co.* v. *Hitt & Rutherford,* that even then the case must be reversed on the other ground.

If Atkins, one of the two joint defendants, can sue the other joint defendant, Wainwright, for more than one-half of the full amount of the judgment as rendered by the Louisiana court, then we say he can sue him for the full amount, and he cannot split up his cause of action for the purpose of obtaining jurisdiction in the justice of the peace court.  Taking the Louisiana judgment, we find that it is "for the sum of one hundred and seventy-five dollars, with legal interest from judicial demand together with the sum of three dollars and fifty cents protest fees, and for all costs of this suit."  The legal interest on the face of the draft (one hundred and seventy-five dollars) from date of maturity, March 16, 1908, to date of judgment, February 10, 1909, at five per cent., the legal rate of interest in Louisiana, is seven dollars and eighty-five cents.  The interest on the protest fee of three dollars and fifty cents from the date of the protest, April 6, 1908, to February 10, 1909, the date of the judgment, is fourteen and one-half cents, and the clerk's costs amounted to nine dollars and the record shows that the sheriff's fees were five dollars, which is properly and manifestly a part of the costs, and thus adding these sums we have, as follows:

Face of note ...........................$175 00
Legal interst on note, from maturity to
    date of judgment ..................   7 85
Protest fee ...........................   3 50
Interest on protest fee, from date of pro-
    test to date of judgment ............   14½
Clerk's and sheriff's costs, as shown by the
    record ............................ 14 00
                            Total ................ ...........$200 49½

It is thus manifest that the amount of the judgment of
the Louisiana court is beyond the jurisdiction of the jus-
tice of the peace court, and hence the entire proceedings
from "A" to "Z" in this case have been illegal, because
the justice court, in which this suit was instituted, was
without jurisdiction, as clearly shown.

By statute 2723, Code 1906, and all the authorities cited
thereunder, and also 55 So. 484, *M. J. & K. C. R. Co.* v.
*Hitt & Rutherford,* and also, especially *Martin* v. *Harden,*
52 Miss 694, which holds that the principal of the debt at
the time suit is brought is the test of jurisdiction. We in-
sist that at the time suit was brought, the debt due by
Wainwright, if he was liable for more than one-half of
said judgment, must have been the full judgment, to wit,
two hundred dollars and forty-nine and one-half cents,
and that the plaintiff in this case has manifestly fraudu-
lently sued for a smaller sum than the full amount for
the purpose of getting jurisdiction in the justice of the
peace court.

This case has been briefed for the appellant by other
attorneys on other points but we do not care to burden
this court with a duplicate of their briefs and we feel so
confident that the case must be reversed on either one of
these two points alone that we stop right here and sub-
mit this case with the utmost confidence that the court will
hold, in accordance with *M. J. & K. C. R. Co.* v. *Hitt &
Rutherford,* 55 So. 484, that Atkins could only have sued

Wainwright for one-half of the full judgment, to wit, two hundred dollars, forty-nine and one-half cents, and that, therefore, the peremptory instruction to find for one hundred and ninety-eight dollars and fifty cents is reversible error, and that if the court does not hold that, then the judgment in this record, together with the parts of the record showing costs of court, demonstrates that the only other amount plaintiff could have sued for was two hundred dollars, forty-nine and one-half cents, which sum is beyond the jurisdiction of any justice court of Mississippi, and hence the case must be reversed and dismissed for want of jurisdiction.

*J. A. Baker,* for appellee.

The second position taken by counsel for appellant deals with the doctrine of subrogation. The discussion is based on the fraudulent proposition that where two or more principals are jointly liable, and one of them settles the judgment, he can only recover his *pro rata* share from the other joint judgment debtors. The doctrine is too well settled in this state and in Louisiana to admit of any other view than that the surety paying the debt, or the judgment rendered on the debt, of the principal, is subrogated to all the rights of the original plaintiff. The only authority relied on by counsel for appellant is that of *M. J. & K. C. R. R.* v. *Hitt & Rutherford,* 99 Miss. 679. There is no question of principal and surety decided in the above case, and it can have no application to the case at bar. This is purely statutory and the statute must govern. Sections 3735 and 4016, Code 1906; *Yates* v. *Mead,* 68 Miss. 787, holds:

"A defendant in an execution who pays the same or any part thereof, as against any other defendant thereto who is liable to him for the sum paid, becomes subrogated to the lien and all of the rights of the plaintiff, and is entitled to execution in his own favor against such other defendant. Code 1880, section 1140. This right extends to

an indorser of a draft on which judgment is rendered against him and the principal debtor.''

The law of Louisiana is equally clear. *Succession of Mrs. E. H. Dorsey,* 7 La. 34, holds: ''A defendant in an execution who pays the same or any part thereof, as against any other defendant thereto who is liable to him for the sum paid, becomes subrogated to the lien and all the rights of the plaintiff, and is entitled to execution in his own favor against such other defendant. Code 1880, sec. 1140. This right extends to an indorser of a draft on which judgment is rendered against him and the principal debtor.

''Where an indorser pays a judgment which has been rendered, both against himself and the drawer, he is subrogated by law to the rights of the judgment creditor.'' See also in support 40 La. Ann. 351; 31 La. Ann. 703.

The pleading in the case at bar clearly shows that appellee was an indorser of the draft drawn on and accepted by appellant. No point can be raised by appellant, the principal debtor, the principal debtor in the judgment, that the judgment failed to distinguish the indorser from the acceptor but was rendered jointly. Certainly the appellee on paying the judgment was subrogated to the rights of the original plaintiff, and entitled to recover of appellant, the principal judgment debtor, the amount actually paid by him in settlement of the judgment, which was one hundred and ninety-eight dollars and fifty cents.

The third position relied on by counsel for appellant is that of jurisdictional amount. It is argued that the principal amount in controversy exceeds the justice of the peace jurisdiction, and therefore the judgment must be reversed. What is the rule in arriving thus at the jurisdiction? Our courts have held in construing the statute on the subject that interest and costs are not a part of the amount in controversy, but a legal incident, easily computed. *Jackson* v. *Whitfield,* 51 Miss. 202. In *Park* v.

*Granger,* 96 Miss. 503, Chief Justice WHITFIELD in his opinion states the law that the jurisdiction of the justice of the peace is limited to the principal amount in controversy. The question for us then to decide is, what is the principal amount in controversy in the suit at bar? Is it two hundred dollars, forty-nine and one-half cents as tabulated by counsel for appellant? Or is it the amount paid by appellee in the settlement of the judgment, which is shown by the record to be one hundred and eighty-nine dollars and fifty cents? Let us assume that appellant paid, or promised the judgment for one hundred and fifty dollars. Could he recover the full amount of the judgment from appellant? His claim against appellant is simply the amount he paid as indorser of the draft. This matter is fully settled as a principle of law. All the authorities I have been able to find hold that a surety can only recover the actual amount paid by him as surety.

In *Succession of B. H. Dinkgrove,* 31 La. Ann. 703, the court held: "Where a surety who is called on to pay the debt of the principal compromises and settles the debt for a sum much less than the amount of the debt, he is entitled to claim from the principal only the actual amount paid by him."

The amount that appellee could recover of appellant in the state of Louisiana is one hundred and ninety-eight dollars and fifty cents, the amount paid by appellee in settlement of the judgment, and this amount is the principal amount in controversy, and in the jurisdiction of the justice of the peace.

COOK, J., delivered the opinion of the court.

This suit was begun by attachment in the justice of the peace court, and was based upon an assigned judgment rendered by a Louisiana court in favor of J. T. Steele against M. E. Wainwright and J. W. Atkins, appellee. It appears that a draft was drawn by one H. W. Wainwright in favor of J. T. Steele upon appellant, M. E. Wainwright,

which was accepted by him and indorsed by appellee, J. W. Atkins. The payee, J. T. Steele, instituted suit against the drawer, the drawee, and J. W. Atkins, the indorser, and judgment was rendered by the Louisiana court against appellant, the drawee and acceptor of the draft, and J. W. Atkins, the indorser thereof. Subsequently J. W. Atkins purchased and had this judgment assigned to him, paying therefor one hundred and ninety-eight dollars, for which sum this suit was brought. The circuit court directed the jury to find for plaintiff for the full amount sued for, and from this judgment an appeal is prosecuted to this court.

It is contended that the judgment of the Louisiana court upon its face was for more than two hundred dollars, and therefore the justice of the peace had no jurisdiction of the cause, and, the justice of the peace having no jurisdiction, the circuit court was without jurisdiction. Earnest argument and much mathematics are used by learned counsel to demonstrate the soundness of this contention. If we understand the record in the Louisiana court, and we think we do, it is entirely unnecessary to figure against counsel, or to even cast any suspicion or doubt upon their mathematical calculations. If it be true, and it must be true, because "figures do not lie," it does not follow that plaintiff below had a right to sue defendant for the full amount of the judgment. It seems to us clear that plaintiff was merely an indorser and surety, and as such he could not sue the principal debtor for more than he was compelled to pay to release himself from the judgment. It is undisputed that he paid one hundred and ninety-eight dollars for the judgment, and defendant could have demanded a cancellation of this judgment upon the payment of this sum and legal interest, and so we are of the opinion that plaintiff invoked the jurisdiction of the proper court.

Again, it is said plaintiff in no event could recover more than one-half of the amount he paid for the judgment,

because the judgment was rendered against him and the defendant "jointly and *in solido*." We think that, being a surety, plaintiff, when he satisfied the judgment against himself and his principal, could recover the full amount paid by him to accomplish this end. As between the principal and surety, the surety was not compelled to contribute.

Lastly, it is insisted that the record of the proceedings in the Louisiana court shows that this court did not have jurisdiction to render the judgment. This contention is based upon the theory that the record shows appellant was only constructively served with process. We think this is a misconception of the record. It appears from the record that appellant appeared and there said that he could not make a defense to the suit without an inspection of the draft he was alleged to have accepted. His demand for oyer of the writing was answered by plaintiff filing the original draft.

*Affirmed.*